UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| BRIAN R. BLAZER, d/b/a CARPENTER BEE SOLUTIONS, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 5: 17-430-DCR |
| V. | ) ) | |
| CHRISMAN MILL FARMS, LLC, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Plaintiff Brian Blazer's ("Blazer") motion to dismiss Defendant Chrisman Mill Farms, LLC's ("CMF") Amended Counterclaims [Record No. 21] and CMF's motion for a temporary restraining order and a preliminary injunction. [Record No. 52] More specifically, CMF seeks an order requiring Blazer to revoke his take-down notices from online retailers and forgo further enforcement actions. For the reasons discussed below, the Court will grant, in part, and deny, in part Blazer's motion to dismiss. CMF's motion for injunctive relief will be denied.

**I.**

Blazer owns U.S. Patent No. 8,375,624 ("the '624 Patent) which covers an insect trap meant for carpenter bees. [Record No. 3-1] In December 2015, CMF began selling traps that unknown to it allegedly infringed Blazer's patent. [Record No. 57, p. 3] In light of the allegations of infringement, CMF obtained a license under the '624 Patent and began selling traps under the license on December, 29, 2015. [*Id*.] The duration of the agreement was one

year, ending in December 2016. [*Id*. at p. 2] Blazer sought to negotiate more favorable terms for a new contract, but was unsuccessful. As a result, the business relationship ended and CMF designed a new trap which it believed did not infringe the '624 Patent. [*Id.*] CMF notified Blazer of its intent to begin marketing the new trap, and provided Blazer the opportunity to object and provide reasons why he believed the new trap infringed on his patent. [*Id.*] From the record before the Court, it appears that Blazer never articulated to CMF why the trap infringed his patent and instead filed this suit.

Blazer contacted several online retailers in February 2017, alleging CMF's new trap infringed the '624 Patent. He contacted Amazon and asserted that CMF's new trap infringes the claims of the '624 Patent, which caused Amazon to contact CMF and notify it of the allegations. [Record No. 52-4] Amazon indicated to CMF that attempts to relist the new trap prior to resolving the allegations of patent infringement may result in the removal of CMF's selling privileges on Amazon. [*Id*.] In Blazer's original infringement contentions to Amazon, he wrongly indicated that the roof of the new trap extended past the top of the trap to the shelter the entrance. [Record No. 57, pp. 6-7] He later amended his infringement contentions to correctly note that the roof does not extend past the top and modified his contentions further. [*Id*.]

Blazer also contacted Etsy.com, Bonanzo.com, and Houzz.com, alleging that the new trap infringes his patent. Subsequently, all of the retailers notified CMF of the allegations and indicated any further attempt to relist the new trap prior to resolving the allegations of patent infringement would result in the loss of selling privileges. [Record Nos. 7, 8, 9]

The '624 Patent was reissued as RE46,421 ("RE46421") on June 6, 2017. [Record No. 52-2] The reissue patent retains claims 1-12 without amendment, and adds reissue claims 13-

21. [*Id.*] Blazer has alleged that CMF's trap infringes claims 1-4, 7-8, 10, 13-17, and 20-21 of the patent. [Record No. 56, p. 3]

**II.**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must determine whether the counterclaims state a viable claim for relief. Simply put, the counterclaims "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations must be sufficient to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, and permit the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While a counterclaim need not contain detailed factual allegations, it must contain more than an "unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555).

A preliminary injunction is an extraordinary equitable measure. It has been characterized as "one of the most drastic tools in the arsenal of judicial remedies." *Am. Civ. Liberties Union of Ky. v. McCreary Cnty., Ky.*, 354 F.3d 438, 444 (6th Cir. 2003) (internal quotation marks and citation omitted). For this reason, it should not be extended to cases which are doubtful or do not come within well-established principles of law. *See id.*

"Federal Circuit law governs the legal standard applicable to the question of whether a court should issue a preliminary injunction in a patent case." *FieldTurf USA, Inc. v. Astroturf, LLC*, 725 F. Supp. 2d 609, 613 (E.D. Mich. 2010) (citing *Mikohn Gaming Corp. v. Acres*

*Gaming, Inc.,* 165 F.3d 891, 894 n. 3 (Fed. Cir. 1998)). "To obtain a preliminary injunction, a party must show (1) reasonable likelihood of success on the merits; (2) irreparable harm; (3) that the balance of hardships tips in its favor; and (4) the impact of the injunction on the public interest." *Jack Guttman, Inc. v. Kopykake Enterprises, Inc.*, 302 F.3d 1352, 1356 (Fed. Cir. 2002). However, the factors do not all carry equal weight. The first two factors effectively set a threshold showing that the moving party must meet before the other factors are weighted. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) ("[A] movant cannot be granted a preliminary injunction unless it establishes *both* of the first two factors, i.e., likelihood of success on the merits and irreparable harm." (emphasis in original)). The Federal Circuit's standard of likelihood of success is whether success is more likely than not. *See Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 526 (Fed. Cir. 2012).

### III.

A.  **Motion to Dismiss Analysis**

1.  **Invalidity and Unenforceability Claim**

Blazer argues that Count 3 of CMF's Amended Counterclaim must be dismissed for failure to state a claim, specifically alleging that Count 3 contains nothing more than a formulaic recitation of various statutory bases for invalidity, while lacking any allegations of facts to demonstrate the claims are plausible. While CMF contends that it has alleged

sufficient facts to support its claims, it also argues that the heightened pleading standard of *Iqbal* and *Twombly* do not apply to patent invalidity counterclaims.[1]

The allegations contained in Count 3 of CMF's Amended Counterclaim state a plausible claim for relief. While the Counterclaim does contains a paragraph listing the statutory provisions CMF alleges have been violated, it goes on to state the facts on which it bases it claims. The counterclaim alleges that the '624 Patent and RE46421 are invalid as indefinite "for failing to clearly set forth a definition for ambient other than its plain and ordinary meaning." [Record No. 18, ¶ 101] In addition, the two following paragraphs also state CMF's contention for invalidity coupled with the facts that form the basis of the allegation. [*Id*. at ¶¶ 102, 103] Further, the relevant facts, which CMF restates and realleges in each count, provide a factual basis for CMF's invalidity and/or unenforceability count. [*See Id*. at ¶¶ 64-70.] CMF has stated a plausible claim sufficient to overcome the Blazer's motion to dismiss.

### 2. Ownership and Breach of Duty Claim

This claim arises solely from the actions of Blazer in this litigation. Blazer initiated this case in the Northern District of Alabama on February 27, 2017. [Record No. 1] The

---

[1] CMF's reliance on a lesser pleading standard stems from cases decided before the abrogation of Fed. R. Civ. P. 84 and the forms it incorporated by the 2015 amendments to the Federal Rules of Civil Procedure. CMF does not provide citation to any case decided after the 2015 amendments in support of its argument. While the Sixth Circuit has not directly addressed the issue, "it is overwhelmingly accepted by courts that have examined the question that the 'existing pleading standards' referred to in the Advisory Committee Notes are those defined in *Twombly* and further refined in *Iqbal*." *Webasto Thermo & Comfort North America, Inc. v. Bestop, Inc.*, Case No. 16-CV-13456, 2017 WL 4535290, *4 (E.D. Mich. Oct. 11, 2017) (citing various cases from around the country supporting the conclusion). Therefore, the Court will address the sufficiently of the allegations under the *Iqbal/Twombly* standard.

original complaint contained two counts, patent infringement and breach of contract. [*Id*.] Regarding the breach of contract claim, the original complaint alleged that the parties had entered into a written contract, and that CMF breached the contract by failing to pay the full amount of royalties owed under it. Further, the original complaint alleged breach of contract by the defendant "refusing to recognize the majority ownership interest . . . that was granted to Plaintiff by the parties' agreement." [*Id*. at ¶ 50] The original complaint alleged that Blazer was entitled to specific performance to remedy the breach in the form of a judgment that he owns a majority ownership interest in CMF. [*Id*. at ¶ 51] The Court has serious reservations about the authenticity of the document attached to the original complaint which purports to give Blazer an ownership interest in CMF. [*See* Record No. 1-3.] Blazer filed an amended complaint in this action, six days after his initial filing, in which he removed all reference to the 51% ownership interest and claimed a breach of contact based solely upon a failure to pay royalties. [Record No. 3] Further, the amended complaint replaced the questionable document originally attached to the original complaint with what appears to be the original. [Record No. 3-3] To no surprise, the newly filed document made no reference to a 51% ownership.

      CMF filed the counterclaim seeking a declaratory judgment that Blazer is not a member of CMF, on the basis of Blazer having claimed to own an ownership interest in CMF. [Record No. 18, ¶ 146] CMF claims in the alternative that if Blazer is a member of CMF, he owes a fiduciary duty to CMF and alleges he has breached that duty. [*Id*. at ¶¶ 151-160] Blazer filed his motion to dismiss, arguing that because he filed an Amended Complaint which removed any such allegation of claimed ownership in CMF, the counterclaims should be dismissed. [Record No. 21, p. 9] However, this reasoning fails to recognize that while he may have

amended his complaint, CMF has a valid reason to seek declaratory judgment on the issue because he had alleged an ownership interest and a document purporting to give him such an interest is in existence, although of questionable authenticity. Further, while in his Answer to the Amended Counterclaim he denies having claimed to own a 51% equity stake in CMF (Record No. 23, ¶ 146), in the very next paragraph he also denies that his claim to be a member of CMF is false (Record No. 23, ¶ 147). As such, a live case or controversy exists between the parties and CMF has stated a valid claim.

### 3. Inequitable Conduct Claim

"[I]n pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009). While "knowledge" and "intent" may be alleged generally, "a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id*. at 1328-29. To adequately plead materiality, the allegations must "explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Id*. at 1329-30.

CMF's Amended Counterclaim allegations are deficient because the pleading identifies the "who" as "an individual associated with the filing and prosecution of RE46421 made an affirmative misrepresentation of a material fact." [Record No. 18, ¶ 162] Even looking to the relevant facts section contained in the Amended Counterclaim, CMF only identifies the "who"

as two inventors or their patent attorney.  [*See id.* at ¶¶ 71, 72, 74, 75]  As in *Exergen*, CMF has not made the allegation against a specific person and instead broadly refers to everyone involved in the prosecution of the patent.  The pleading thus fails to identify the "who" of the material omissions and misrepresentations.  Further, CMF does not allege why the information was material or how the examiner would have used the information in assessing the patentability of the claims, all of which is required in pleading a claim for inequitable conduct.  *See Exergen*, 757 F.3d at 1329-30.  CMF's inequitable conduct claim fails to state a claim as required by Rule 9.

> **B.** **Preliminary Injunction Analysis**
>
> > **1.** **Likelihood of Success on the Merits**
> >
> > > a) *CMF's non-infringment contention*

"Patent infringement is a two-step inquiry.  First, the court must construe the asserted patent claims(s) as a matter of law.  Second, the fact finder . . . must determine whether the accused product, composition, system, or process contains each limitation of the properly construed claims, either literally of under the doctrine of equivalents.  The first step is a question of law; the second step is a question of fact."  *Anatomy of a Patent Case*, Harry Gutman, Editor-in-Chief, 2d ed. Chpt. 10.I. (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372-74 (1996); *Ferguson Beauregard v. Mega systems, LLC*, 350 F.3d 1327, 1338 (Fed. Cir. 2003)).

Claim terms are generally given their ordinary meaning as understood by persons skilled in the art in question at the time of the invention.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc).  "[T]he person of ordinary skill in the art is deemed

to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of entire patent, including the specification." *Id*. at 1313.

CMF's non-infringement contention rests on the portion of claim 1 which reads "a means to shelter an entrance to said hole is provided to reduce the admittance of ambient light." [Record No. 52-2, p. 17, col. 7, lines 49-51] CMF argues that for this claim element to be understood, the terms and phrases "hole," "entrance to said hole," and "shelter" must be construed. [Record No. 57, p. 15] CMF then goes on to provide its own proposed construction of the terms and phrases, resulting in proposed construction limiting the claim element of "means to shelter an entrance to said hole" to only include an overhanging roof. [*Id*.] CMF attempts to support this construction by indicating that the specification itself describes the overhanging roof as the "only" means to shelter the entrance to said hole. [*Id*.] However, not only is CMF's indication incorrect and fails to take into account the other means identified later in the patent specification, CMF's proposed construction of the terms and phrases would result in a claim construction so narrow as to exclude three of the five preferred embodiments, Figures 3A-D, 4A-B, and 5A-C.

CMF's contention that the only "means to shelter the entrance to said hole" is the roof which "overhangs and provides added shelter for at least one entrance hole," fails by looking at the words of the quoted language itself. [*Id*.] The overhanging roof is described as providing "added shelter," which ordinarily would mean it is not the only "means to shelter," a construction CMF is attempting to put forward. In fact, the sentence immediately preceding the quoted language identifies an additional "means to shelter" stating that [t]he upward sloping entrance mimics the preferred entrance style of a natural bee nest while reducing the amount of ambient light entering the entrance hole." [Record No. 52-2, p. 14, col. 2, lines 46-

- 9 -

49] And while CMF argues that the angle of the entrance hole cannot be the "means to shelter," the specification describes several times the angle of the entrance holes as providing sheltered entrance holes. [*Id*. at p. 16, col. 6, lines 36-40; *id*. at p. 16, col. 6, lines 52-24]

"'[A] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct.'" *Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1326 (Fed. Cir. 2013) (quoting *On0line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1138 (Fed. Cir. 2004)). Such a claim construction would require "'highly persuasive evidentiary support.'" *Bowers v. Baystate Technologies, Inc.*, 320 F.3d 1317, 1328 (Fed. Cir. 2003) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996)). Here, CMF provides no evidentiary support of its proposed claim construction to support such a narrow claim construction that would exclude several preferred embodiments. CMF has not showed a reasonable likelihood of success on the merits of non-infringement.

### b) Recapture Rule

CMF next argues that Claim 13-21 of RE464 are invalid under the "Recapture Rule." Under the rule against recapture, a patentee is prevented "from regaining through reissue the subject matter that he surrendered in an effort to obtain allowance of the original claim. *In re Clement*, 131 F.3d 1464, 1468 (Fed. Cir. 1997); *see also Mentor Corp. v. Coloplast, Inc.*, 998 F.2d 992, 995 (Fed. Cir. 1993). "Claims that are broader than the original patent claims in a manner directly pertinent to the subject matter surrendered during the prosecution are impermissible." *Clement*, 131 F.3d at 1468.

A three-step test is applied in determining whether the recapture rule has been violated. *See Pannu v. Storz Instruments*, Inc., 258 F.3d 1366, 1371 (Fed. Cir. 2001). The first step is

to ascertain "whether and in what 'aspect' the reissue claims are broader than the patent claims." *Id*. "For example, a reissue claim that deletes a limitation or element from the patent claims is broader in that limitation's aspect." *Clement*, 131 F.3d at 1468. The second step is to determine whether the broader aspects of the reissue claims relate to surrendered subject matter of the original claim. *Id*. at 1468-69. Courts look to the prosecution history for arguments and changes to the claims made in an effort to overcome a prior art rejection. *Id*. Although the recapture rule does not apply in the absence of evidence that the applicant's amendment was "an admission that the scope of that claim was not in fact patentable," *Seattle Box Co. v. Industrial Crating & Packing, Inc.,* 731 F.2d 818, 826, (Fed.Cir.1984), "the court may draw inferences from changes in claim scope when other reliable evidence of the patentee's intent is not available," *Ball Corp. v. United States,* 729 F.2d 1429, 1436 (Fed. Cir. 1984).

Finally, in the third step, courts must "determine whether the surrendered subject matter has crept into the reissue claim." *Clement*, 131 F.3d at 1469. "If the scope of the reissue claim is the same as or broader than that of the canceled claim, then the patentee is clearly attempting to recapture surrendered subject matter and the reissue claim is, therefore, unallowable." *Id.* "Violation of the rule against recapture may be avoided under this final step of the analysis if the reissue claims 'materially narrow' the claims relative to the original claims such that full or substantial recapture of the subject matter surrendered during prosecution is avoided." *In re Mostafazadeh*, 643 F.3d 1353, 1358 (Fed. Cir. 2011) (citing *N. Am. Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1349 (Fed. Cir. 2005)).

CMF has only outlined the three-step test the Court is to apply when determining whether the rule against recapture has been violated. After the overview of the test, CMF

states "[t]he defendant believes that is has more than adequately demonstrated that claims 13-21 of RE46421 are invalid for violating the recapture rule and cannot be infringed." [Record No. 57, p. 22] At no point does CMF actually apply the facts of the case to the three-part test.

Looking at the original claim that was finalized after proposed amendments by the examiner to include "a means to shelter an entrance to said hole is provided to reduce the admittance of ambient light;" [Record 52-10, Exhibit I] no evidence is put forth that allows the Court to find that step-two is met. The amendment to the original claim must have been made to overcome prior art rejection and CMF has not shown or argued how the amendment was made to overcome any prior art.

### c) Prior Art Invalidity

CMF argues that the prior art renders the 624 Patent and RE46421 invalid and unenforceable because it alleges that the combined prior art references disclose each and every claim element of the claims of the patent in this case. However, CMF has not provided the Court with any evidence of how a person of ordinary skill in the art would apply the references to the asserted claims to render the claims obvious. *See In re Mouttet*, 686 F.3d 1322, 1333 (Fed. Cir. 2012) (stating "the test for obviousness is what the combined teachings of the references would have suggested to those having ordinary skill in the art"). Because CMF has not provided the Court with anything other than its own contentions, the Court cannot find that CMF has met its burden of showing reasonable likelihood of success on prior art invalidity.

### d) § 112 Invalidity

CMF also argues that the claims of the patent are invalid for lacking enablement or an adequate written description under 35 U.S.C. § 112(a) or are indefinite under 35 U.S.C. § 112(b). However, as with the test for obviousness, both the test for adequate written

description and indefiniteness is evaluated form the perspective of a person of ordinary skill in the art. *See Araid Pharmaceuticals, Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc) (holding "the description must 'clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed.'" (citation omitted, alterations in original)); *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S.Ct. 2120, 2129 (2014) (holding that 112 ¶ 2 requires "that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty."). Once again, CMF fails to provide the Court with any indication of how those skilled in the art would read the patent at issue. Therefore, CMF cannot be found to have a reasonable likelihood of success on the merits at this time.

### e) *§ 102 Invalidity*

CMF finally argues that the claims of the patent are invalid for prior public disclosure under 35 U.S.C. § 102. However, CMF has provided no evidence regarding when Blazer's first public disclosure or sale of the invention occurred. Instead, CMF appears to be relying on an assumption that it will ask for and receive a spoliation instruction from the Court because of alleged destruction of evidence. But CMF cannot use this form of speculation to show a reasonable likelihood of success on the merits that the patent is invalid for prior public disclosure. Absent any evidence regarding the issue, the Court cannot grant CMF the extraordinary remedy of injunctive relief based on pure speculation.

Because CMF has not established a reasonable likelihood of success on the merits, this Court need not address other preliminary injunction factors. A finding of likelihood of success is necessary before granting a preliminary injunction. Therefore, CMF is not entitled to a preliminary injunction. *See Amazon*, 239 F.3d at 1350.

## IV.

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1. Plaintiff's Motion to Dismiss [Record No. 21] is **GRANTED**, in part, and **DENIED**, in part.

2. Defendant CMF's claim for declaratory judgment of invalidity of RE46421 due to inequitable conduct (Count IX) is **DISMISSED**, with prejudice. All other claims remain pending.

3. Defendant CMF's Motion for Temporary Restraining Order and Preliminary Injunction [Record No. 52] is **DENIED**.

This 2nd day of January, 2018.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge